CHANEY, Appellee,

v.

BRETON BUILDER CO., LTD., d.b.a. Winthrop Terrace Apartments, Appellant.

[Cite as *Chaney v. Breton Builder Co., Ltd.* (1998), 130 Ohio App.3d 602.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–98–017.

Decided Dec. 4, 1998.

*Michael S. Skulina*, for appellee.

*Richard A. Schmidt*, for appellant.

GLASSER, Judge.

This is an appeal from a judgment of the Bowling Green Municipal Court, which found that appellant had "automatically and wrongfully" withheld a $25 carpet-cleaning fee from appellee's apartment security deposit and ordered appellant to pay appellee statutory damages of $50 plus reasonable attorney fees of $340, interest, and court costs, as provided by R.C. 5321.16.

On appeal, appellant, Breton Builder Company, Ltd., sets forth the following three assignments of error:

"I. The Municipal Court improperly interpreted ORC [Chapter] 5321 and the standard [of] 'normal wear and tear' as applied to landlords, tenants and their cleaning responsibilities at the end of the lease term.

"II. The lower court abused its discretion by awarding $340.00 to nonparty Student Legal Services.

"III. The Court erred by awarding attorney fees as part of judgment instead of as court costs."

Appellee, Jeremie Chaney, sublet an apartment owned by appellant from January 1997 until May 7, 1997. Upon subletting the apartment, appellee and his roommate paid the original lessee $200, and appellee was assigned the right to the original $200 security deposit. When appellee vacated the apartment on May 7, 1997, he cleaned the apartment, but did not shampoo the carpet. On May 10, 1997, one day after the original lease term expired, appellee's roommate moved out of the apartment.

On May 22, 1997, appellant sent appellee a check for $95.45, the amount of the deposit minus $25 for shampooing the carpet, $66 for general "cleaning charges," and $13.55 for the extra day appellee's roommate stayed past the term of the lease.[1] On October 16, 1997, appellee filed the complaint herein, in which he asserted that appellant wrongfully withheld the miscellaneous cleaning charges and carpet-cleaning charges from the security deposit, in violation of R.C. Chapter 5321.

On December 4, 1997, a hearing was held before a magistrate, at which evidence was presented as to the necessity for cleaning the apartment and the carpet and the reasonable amount of appellee's attorney fees. Appellee was represented at the hearing by an attorney from Student Legal Services, a nonprofit corporation providing prepaid legal services to Bowling Green State University students who voluntarily pay $5 per semester. On January 12, 1998,

---

1. Appellee concedes that his roommate stayed in the apartment one day beyond the term of the lease, and that appellant was entitled to $13.55 for the extra day's rent.

the magistrate filed a decision in which he found, based on the evidence presented, that the carpet in appellee's apartment was not damaged "beyond any normal wear and tear." Accordingly, the magistrate recommended that appellant be ordered to pay appellee statutory damages of $50 for wrongfully withholding the carpet-cleaning fee from his security deposit.[2] The magistrate also recommended that appellant pay $340 in attorney fees to Student Legal Services, plus interest on the entire judgment, and court costs. On January 27, 1998, appellant filed objections to the magistrate's findings of fact and conclusions of law, and on February 6, 1998, the trial court overruled appellant's objections and adopted the magistrate's decision. On March 4, 1998, appellant filed a timely notice of appeal, and on March 30, 1998, at appellant's request, the trial court stayed the accumulation of postjudgment interest pending the decision of this court.

◼ Appellant argues in its first assignment of error that the trial court erred when it concluded that appellant deducted the cost of carpet cleaning from appellee's security deposit in violation of R.C. 5321.16, which states:

"(B) Upon termination of the rental agreement * * * [a]ny deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession. * * *

"(C) If the landlord fails to comply with division (B) of this section, the tenant may recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorneys fees."

◼ It is well settled that a provision in a lease agreement as to payment for carpet cleaning that is inconsistent with R.C. 5321.16(B) is unenforceable. *Albreqt v. Chen* (1983), 17 Ohio App.3d 79, 80, 17 OBR 140, 140–141, 477 N.E.2d 1150, 1152–1153. Accordingly, a landlord may not unilaterally deduct the cost of carpet cleaning from a tenant's security deposit without an itemization setting forth the specific need for the deduction. *Id.* at 81, 17 OBR at 142, 477 N.E.2d at 1153–1155.

In this case, the lease does not directly provide for an automatic deduction from appellee's security deposit for steam cleaning/shampooing the carpet. However, in April 1997, appellant gave appellee a preprinted form titled "MOVE OUT CLEANING INSTRUCTIONS FOR RESIDENTS [OF] WINTHROP AND SUMMIT TERRACE." The instructions stated:

---

2. The magistrate also found that no evidence was presented to show that the rest of the apartment did not need to be cleaned by appellant. Accordingly, the magistrate concluded that appellant did not wrongfully withhold the $66 general cleaning fee from appellee's security deposit.

"Dining Area:

"1. Floors/carpet cleaned. Carpets will need to be steam cleaned. If you rent a machine save and turn in the receipt. * * *

"Living Room:

"1. Carpets are to be swept and SHAMPOOED with a steam cleaner. * * *

"Bedroom:

"1. Carpets are to be swept and SHAMPOOED. * * *

"*You may allow management to clean your carpet after you move-out (we actually prefer this—if you walk on wet carpet, you will mat it down and we will have to redo it or if it is not done properly.) The charge is only what we are billed from our contractor. Cost ranges from $25.00-$35.00 depending on the size of your apartment.*

"The management is more than happy to return you full deposit if the cleaning is done properly. *Sorry, dirt does not qualify as normal wear and tear.* If you have any questions, please feel free to call the office." (Emphasis *sic.*)

Upon consideration, this court finds preliminarily that the wording of appellant's move-out checklist is such that a reasonable tenant would believe that if he did not shampoo the carpet himself to appellant's satisfaction, appellant would automatically shampoo the carpet and deduct the charge from his security deposit. As stated above, such an automatic deduction is inconsistent with R.C. 5321.16 and is therefore unenforceable.

█ As to whether appellant was otherwise entitled to deduct the price of cleaning a dirty carpet from appellee's security deposit, R.C. 5321.05 imposes upon tenants an obligation to "[k]eep that part of the premises that he occupies and uses safe and sanitary." The statute does not, however, specifically require tenants to clean carpets that are made dirty by normal and ordinary use. See *Wilhelm v. Ison* (Mar. 15, 1993), Greene App. No. 92–CA–97, unreported, 1993 WL 76961.

Paragraph six of the lease agreement, titled "SECURITY DEPOSIT," states that the security deposit is intended to provide a fund from which the landlord may reimburse itself for, among other things, "unreasonable wear and tear of the apartment." That same paragraph also states that the tenants are entitled to a full refund of the security deposit if the apartment is returned "in the same condition as it was in when they received possession, except for ordinary wear and tear."

At the hearing, evidence of the condition of the carpet was provided by appellee, in the form of pictures taken on May 7, 1997, and the testimony of

appellee and his fiancée, Angela Shreiner, who stated that the carpet was not dirty when appellee moved out of the apartment. In addition, Shane Ostrowski, appellant's leasing agent, testified that the carpet had no unusual stains or marks. However, Ostrowski stated that, in his opinion, the carpet was sufficiently dirty to justify a professional cleaning.

This court has reviewed the entire record that was before the trial court and, upon consideration thereof, our preliminary finding as stated above, and the law, finds that the trial court did not err by finding that appellee did not damage the carpet "beyond any normal wear and tear" and thereafter concluding that appellant wrongfully deducted the carpet-cleaning fee from appellee's security deposit. Accordingly, appellant's first assignment of error is not well taken.

■ Appellant asserts in its second assignment of error that the trial court erred by ordering appellant to pay $340 in attorney fees to Student Legal Services. Appellant argues in support thereof that the award is unreasonable and constitutes an abuse of the trial court's discretion, because appellee paid only $5 per semester to obtain legal representation from Student Legal Services.

■ The determination that a tenant is entitled to attorney fees pursuant to R.C. 5321.16(B) and (C) and the amount of the award are within the sound discretion of the trial court. *Smith v. Padgett* (1987), 32 Ohio St.3d 344, 349, 513 N.E.2d 737, 741–742.[3] "The term 'abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142.

As to whether appellee is entitled to attorney fees of more than $5, the language of R.C. 5321.16 does not restrict the trial court's ability to award attorney fees in cases where tenants have obtained legal representation at little or no cost. Such a limitation would allow landlords to arbitrarily benefit from the

---

**3.** In determining a reasonable amount of attorney fees, the trial court may look to the factors enumerated in DR 2–106(B):

" '(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

" '(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

" '(3) The fee customarily charged in the locality for similar legal services.

" '(4) The amount involved and the results obtained.

" '(5) The time limitations imposed by the client or by the circumstances.

" '(6) The nature and length of the professional relationship with the client.

" '(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

" '(8) Whether the fee is fixed or contingent.' " *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 90–91, 2 O.O.3d 65, 68–69, 355 N.E.2d 894, 898–899. See, also, *Bittner v. Tri–Cty. Toyota, Inc.* (1991), 58 Ohio St.3d 143, 569 N.E.2d 464.

"fortuitous circumstance" of a tenant's inability to afford a private attorney. *Lewis v. Romans* (1980), 70 Ohio App.2d 7, 9, 24 O.O.3d 9, 10, 433 N.E.2d 622, 623–624. As to whether the trial court's award of attorney fees is reasonable, the record contains uncontroverted evidence as to the amount of hours appellee's attorney spent representing appellee, his particular expertise in handling landlord-tenant matters, and the customary hourly fee paid to lawyers in the community in similar cases.

This court finds that the trial court did not abuse its discretion when it ordered appellant to pay reasonable attorney fees of $340.[4] Accordingly, appellant's second assignment of error is not well taken.

■ Appellant asserts in its third assignment of error that the trial court erred by awarding attorney fees to appellee as part of the judgment and ordering appellant to pay interest on the total amount of $50 statutory damages plus $340 attorney fees. In support thereof, appellant argues that attorney fees awarded pursuant to R.C. 5321.16(C) are to be taxed as court costs, upon which post-judgment interest may not be assessed.

Generally, Ohio courts have held that attorney fees awarded pursuant to R.C. 5321.16(C) are to be taxed as costs, not as damages. *Lacare v. Dearing* (1991), 73 Ohio App.3d 238, 241, 596 N.E.2d 1097, 1099; *Berlinger v. Suburban Apt. Mgmt. Co.* (1982), 7 Ohio App.3d 122, 126, 7 OBR 155, 159–160, 454 N.E.2d 1367, 1372–1373; *Kreps v. Pesina* (Aug. 2, 1996), Lucas App. No. L–95–377, unreported, 1996 WL 430846. See, also, *Burroughs v. Douglas* (Dec. 8, 1983), Cuyahoga App. No. 46030, unreported, 1983 WL 2865; *Breault v. Williamsburg Estates* (Nov. 21, 1986), Lucas App. No. L–86–116, unreported, 1986 WL 13169 (appellate attorney fees awarded pursuant to R.C. 5321.16(C) are to be taxed as costs).

The trial court's February 6, 1998 judgment entry adopting the magistrate's decision stated:

"[Appellee] is awarded judgment against [appellant] in the amount of $50.00 plus attorney fees in the amount of $340.00 plus 10% per annum interest from date of judgment. Defendant shall pay the court costs."

Upon consideration of the foregoing, we find that it is not entirely clear from the above-quoted language whether the trial court intended for postjudgment interest to accrue on the $340 in attorney fees as well as the $50 in statutory damages awarded to appellee. However, the issue as to the trial court's intent is irrelevant in this case, since the accumulation of postjudgment interest has been

---

4. To prevent a windfall in favor of appellee, the amount of attorney fees that the trial court determined to be proper should be paid directly to Student Legal Services. *Lewis v. Romans, supra.*

stayed pending this appeal. Accordingly, pursuant to App.R. 12(C), we hereby enter the judgment the trial court should have rendered, *i.e.*, that the $340 in attorney fees awarded to Student Legal Services is hereby ordered taxed as court costs, and interest shall accrue at the rate of ten per cent per annum on only the $50 judgment awarded to appellee, from February 6, 1998, until it is paid in full. Appellant's third assignment of error is therefore moot and not well taken.

The judgment of the Bowling Green Municipal Court is hereby affirmed. Court costs of these proceedings are assessed to appellant.

*Judgment affirmed.*

HANDWORK, P.J., and SHERCK, J., concur.